MARION CASEY

_v._

THOMAS F. CASEY.

Evidence of extreme cruelty _held_ insufficient in a wife's suit for divorce _a mensa et thoro_ on that ground, on application for alimony _pendente lite_ and counsel fee.

_Mr. Frank W. Heilenday,_ for the petitioner.

_Mr. Joseph F. Farmer,_ for the defendant.

GRIFFIN, V. C.

The petitioner having instituted suit for divorce _a mensa et thoro,_ on the ground of extreme cruelty, filed her petition for alimony _pendente lite_ and counsel fees. The _ex parte_ affidavits filed being unsatisfactory and conflicting, a day was set when the parties might appear in open court with their witnesses. The proofs thus taken establish the fact that the parties were married

July 1st, 1906, and have one child, a daughter, now seven years of age. The wife left the husband several times before the one in question on account of his habits. The testimony was taken covering a period of about seven months, beginning with January 1st, 1914, and terminating on July 21st, 1914, with leave to the parties to extend the inquiry prior to January 1st, 1914, if the evidence adduced rendered such inquiry necessary.

The testimony indicates that the defendant has been for a number of years past, and now is, steadily employed in a position of some responsibility, but, unfortunately, he has been addicted to more than the ordinary use of intoxicating liquors, and habitually came home late at night, if not drunk, in a more or less maudlin condition. Sometimes he brought with him, as late as eleven o'clock at night, some of his boon companions, who were probably under the influence of liquor, and the wife, very properly, ejected them from the house. Apart from this drink habit, little has been shown in the case to condemn him as a dangerous or heartless man. He has the appearance of a kindly man. In his testimony he speaks of his wife as a very good woman and a good housekeeper. During the seven months preceding the desertion she says that he seized her by the throat and struck her twice, but she did not leave him on that account. He denies this story. She left him on July 21st, 1914, because of a scene which occurred that evening. He had been upon an outing; he came home about seven o'clock, and asked her to get something to eat; she sent her daughter to get some chops, and she says she fried them; then she said:

"While I was frying it my little girl came in, and she asked if she could go out. I said, 'Yes;' so she was running out of the door, and he said, 'Come back here!' and his eyes were starting right out of his head, and she ran out and he ran through the hall to get her, and I said, 'Marion, come back here,' and she came back, and I said, 'Just take a look at your father.' I said, 'He is one fine bum.' I said, 'You will remember him when you grow older;' so he picked up the sugar bowl and went to throw it at me. He said, 'Don't you say I am a bum, if you call me a bum I will kill you.' He said, 'The next son of a b—— that calls me a bum is a dead one.' He said, 'I am a bum for the last time,' and he hammered with the sugar bowl and the salt cellar. I told Marion, I said, 'Now you get out of here as soon as you can go.'"

Then she says he said to her:

" 'You get out of here,' he said, 'get out now.' So I took my hat and got, and I said, 'Very well, I am just glad that you put me out,' and I took my little girl and went up to my neighbor's house."

The husband says that he never struck the child. He corroborates this scene, in a measure, spoken of by the wife, and says that he did pound on the table with the sugar bowl and the salt cellar.

The house where they resided was a two-family house, the petitioner and her husband living on the lower floor, her friend, Mrs. McDonald living on the upper floor. She immediately after this scene left her apartments and went to Mrs. McDonald's, where she has remained ever since.

On this state of facts she charges her husband with extreme cruelty.

In the case of *Close* v. *Close,* Mr. Justice Van Syckel, speaking for the court of errors and appeals (*25 N. J. Eq. 526*), said: "It is very difficult to give any affirmative definition which will express, with entire accuracy, the meaning of extreme cruelty in our statute concerning divorce. The courts, both in England and in this country, have refrained from laying down any inflexible rule which should serve as a standard by which to adjudge all cases. The weight of authority is, that the injury actually inflicted or reasonably apprehended, must be bodily harm, in distinction from mere mental suffering.   *   *   * Slight abuse of the person, accompanied by opprobrious language, which would imperil the health of a refined and delicate wife, might be endured with comparative unconcern by one of a less sensitive nature." These rules seem to have stood the test of judicial criticism down to the present time.

After seeing the parties, and hearing them testify, I am satisfied that neither fear of bodily harm nor possible impairment of health induced her leaving him. She is a strong, vigorous, strong-willed, decent young woman, showing not the slightest indications of ill-treatment. She is likewise not supersensitive, nor of such delicacy that the treatment received by her from her husband would impair her health. She, undoubtedly, had some

mental suffering on account of her husband's habits. She is rather quick-tempered, and my notion is that in her dealings with her husabnd her display of temper tended to bring on the disputes between them quite as much as his intemperance. To say the least, her conduct was provocative, and possibly might have had a great deal to do with his excessive indulgence; but considering what she had to endure, it would be hardly fair to criticise her too severely. Differing from his wife, he appears to be a man without much self-control—one who might easily be led astray by his companions.

To my mind, when she left him on July 21st, she did not fear him. Her leaving was due to the fact that she despised, rather than feared. him. I am, therefore, of the opinion that neither at nor before the time that the petitioner left her husband was his conduct such as to justify the inference that if they continued to live together she would be in danger of bodily harm at his hands, or that her health would be impaired.

Finding no legal justification for the wife living apart from her husband, under the rules laid down in *Close* v. *Close, supra,* I will advise an order dismissing the present application.